UNITED STATES *v.* McNELLY.

*(District Court, N. D. Ohio, W. D. January 14, 1885.)*

1. INTERNAL REVENUE—COLLECTION DISTRICTS—REV. ST. § 2603.
   In defining collection districts, it is the policy of the government, in cases of small bodies of water, not to divide the jurisdiction, by locating one side of the water in one district and the other side in another.

2. SAME—DECISIONS OF SECRETARY OF TREASURY.
   The acts and decisions of the secretary of the treasury upon the question of boundaries of collection districts are not conclusive upon the courts, unless made so by statute.

The Opinion States the Facts.
*R. S. Shields,* Dist. Atty., and *Homer Goodwin,* for the United States.
*R. Waite,* for defendant.

WELKER, J., *(charging jury.)* The defendant is the master of the Chief Justice Waite, a steamer duly licensed, plying between the port of Toledo and the port of Put-in Bay, and the islands there located, and engaged in carrying passengers and freight from Toledo to the islands and back again.

The plaintiff alleges that, at the time stated in the petition, the defendant, as such master, in leaving the port at Toledo, and also in leaving the port of Put-in Bay, did not comply with the provisions of the statutes of the United States, by presenting to the collector of the port of departure duplicate manifests of the cargo of his vessel, as required to be presented before a departure of his vessel from a port in one collection district to a port in another collection district; alleging that the port of Toledo is in the collection district of Miami, and the port of Put-in Bay is in the collection district of Sandusky,—whereby he became liable to pay certain penalties, for the recovery of which this action is brought.

The defendant denies that he violated the provisions of the statute in that respect. He also denies that the port of Put-in Bay is located in the collection district of Sandusky, and alleges that it is lo-

cated in the district of Miami, of which Toledo is the port of entry, and that no manifests were required to be presented on leaving either port. The defendant admits that he left both of said ports as stated in the petition, without presenting manifests of the cargo of his vessel. It is not denied that Put-in Bay and Toledo were ports with collector or deputy collector located at either port.

If, therefore, the port of Put-in Bay was in the collection district of Sandusky, then the plaintiff is entitled to recover the amount of the penalties claimed. If it was in the district of Miami, then the defendant has not violated the statute, and is entitled to your verdict. The question of fact for you to determine, therefore, is, was the port of Put-in Bay in the Sandusky district, at the times stated in the petition?

The collection districts of the United States are fixed and defined by acts of congress, and whether Put-in Bay is in the district of Sandusky, or that of the Miami, must be determined by the legislation of congress in relation thereto.

In 1805, in relation to these districts, an act of congress was passed which provided "that all the shores, rivers, and waters of Lake Erie, within the jurisdiction of the United States, which lie between the west bank of Vermillion river and the north cape or extremity of Miami Bay, and including all the waters of the Miami river, shall be a district called the 'District of Miami;'" and the president to designate the port of entry, and two ports of delivery.

On the second of March, 1811, another act of congress was passed, dividing this district into two; and it provided "that all that part of Miami district lying east of the western cape of Sandusky bay shall be a district to be called the 'District of Sandusky;'" the president to designate the port of entry, and no ports of delivery provided for.

This enactment left all of the district created in 1805, not embraced in the new one of Sandusky, in the district of Miami; and these districts remained as so created until December, 1873, when congress passed another act defining these districts, being section 2603 of the Revised Statutes, and which provided:

"*First.* The district of Miami, to comprise all the waters and shores of Lake Erie within the jurisdiction of the United States, from the western cape of Sandusky bay to the western bank of the Miami river, in which Toledo shall be the port of entry; and the president is authorized to establish two ports of delivery in said district. *Second.* The district of Sandusky to comprise all the waters and shores of Lake Erie, within the jurisdiction of the United States, from the western bank of the Vermillion river to the western cape of Sandusky bay, in which Sandusky shall be the port of entry."

This last act of congress takes the place of the acts of 1805 and 1811, and establishes these districts as they were at the times stated in the petition, and when this suit was brought, and controls the questions made in this case.

In both these districts what is called the "western cape of Sandusky bay" is made an important landmark in fixing the boundaries

of each district. It will therefore be important for you to determine, by the evidence, where was the "western cape of Sandusky bay," in 1873, when this act was passed.

For that purpose proof has been allowed to go to you, by witnesses, describing the different points of land at the head of the bay, as well as at the outlet; also evidence as to what point was then and before known and recognized, in the navigation of the lakes and bay, as the western cape of the bay; as well as the maps and charts published by the treasury department of the government; and all of which are entitled to your consideration.

The government claims that the "cape" was located at the west end or head of the bay, and the defendant claims the cape intended in the statute was the cape at the north side of the outlet of the bay, known as Marblehead.

What is a "cape?" It is defined in the dictionaries to be a point of land extending into a lake; projecting into the water; a headland; a piece of land jutting into the lake beyond the rest of the coast line; a promontory.

It will be your duty to settle, first, whether, at the time this act was passed, there was a cape at the west end of the bay, as claimed by the government, and such as would comply with these definitions of a cape. If there was, and it was the western one, and the one intended to be named in the act, then that would fix that part of the description of the boundary. If you should find that there was no such cape there, then ascertain if there are capes of the bay located at the outlet of the bay, as claimed by the defendant. A cape or capes located on either side of the outlet of the bay, and forming a boundary for the bay, would be capes of the Sandusky bay, as described in the act of congress. Then find and determine which of the two capes at the outlet was the western cape, and, if you find the point called Marblehead was such western cape, that would be the starting point to ascertain the boundary of the district, so as to determine in which district was located Put-in Bay port.

In all cases where there is doubt as to the point designated as a starting point for a boundary, the fair and reasonable intent and purpose of congress may and should be considered, and should be determined from the surrounding circumstances, and, in this case, as affecting commerce and navigation connected therewith. In defining collection districts it is the policy of the government, in cases of small bodies of water, such as rivers and narrow bays, not to divide the jurisdiction of the waters thereof by locating one side in one district and the other side in another district. This would operate as a great inconvenience in conducting intercourse between the shores of such waters.

If you find that the cape intended and described was the one called Marblehead, then the waters and shores of Lake Erie, within the jurisdiction of the United States, from that point to the west bank of

the Miami, would be in the Miami district; and the port of Put-in Bay would be included in it, lying west and north of that point, and all the shores and waters of Lake Erie east of that point, including all of Sandusky bay and Sandusky river, would form the Sandusky district.

If you find the cape intended by congress to have been located at the west end of the bay, then the question will arise whether all the shores and waters of Lake Erie, lying east of a line drawn north from that point to the north jurisdiction of the United States, or Canada line, would be included in the Sandusky district, and, if so, then the port of Put-in Bay would be in the Sandusky district.

In the act of 1811, which remained in force until 1873, and under which the business of the district up to that time was conducted by the government, the Sandusky district was described as all of that part of Miami district lying east of the western cape of Sandusky bay. This would include the shores, rivers, and waters of Lake Erie, to the Canada line, lying east of a north line from that point, wherever it might be. But the statute of 1873 very materially changes the description contained in the act of 1811, and provides "that all the waters and shores of Lake Erie, *from* the western cape of Sandusky bay *to* the western bank of the Miami river, shall be the Miami district." This, then, seems to adopt shore lines from one point to another, and means continuous shores from the starting point to the terminal point; and does not adopt a line north, across the peninsula, to the waters of the lake, and thence to the Canada line, as the western boundary of the Sandusky district.

And if you determine that the western cape intended to be described in the act of congress was at the western end of the lake, I direct you that, under the statute, the boundary of the Miami district would be from such point along the northern shore of the bay to Marblehead, and along the shores to the western bank of the Miami, following shore lines, and which would include the Miami river, and both of its shores; and that such a line would give the Miami district jurisdiction on the north side of the bay, and all the waters of Lake Erie north of Marblehead, and thus divide the jurisdiction of Sandusky bay with the Sandusky district. This result may be considered by you in determining the intent and purpose of congress in the act of 1873, providing the boundaries of these districts.

Evidence has been allowed to go to you showing the acts and decisions of the secretary of the treasury in determining and recognizing the location of Put-in Bay as in the Sandusky district, and at other points of Lake Erie north of the west end of the bay. It is claimed by the government that such action and decisions of the secretary are final and binding on the defendant, which should be enforced by the court. Up to the act of 1873 these acts were, in my judgment, in accordance with the statutes. This action and these decisions, since the act of 1873, of the secretary of the treasury, representing,

as he does, a part of the executive department of the government, are worthy of great respect, and entitled to great weight in the construction of the statute. To his subordinates they are final, but to others they are not final. To the judicial department, and in controversies involving construction of statutes, they are only persuasive, and not conclusive, unless made so by statute. In giving importance to these decisions and acts, it is important to consider all the acts and decisions of the different secretaries, in the written decisions, as well as the charts that are in evidence before you, in relation to the boundaries of these districts.

If you find from the evidence, and under these instructions, that the port of Put-in Bay was at the times named in the petition in the Sandusky district, then you will find for the plaintiff, and the measure of its recovery would be the penalties named in the petition, put into one amount. If you find that the port named was in the Miami district, as claimed by the defendant, then your verdict will be for the defendant.

The jury being recalled, after deliberating some time without agreement, was instructed as follows:

It will make no difference in the location of the port of Put-in Bay whether you decide the western cape was at west end of the bay or at Marblehead, for, under my instructions heretofore given, if at west end of bay, then the shore must be followed to Marblehead, and around it, to the point named in the Miami river; and that would put the waters north of Marblehead, and west of such line, to the Canada line, in the Miami district, the same as if it started at Marblehead, and would include Put-in Bay in the Miami district.

Verdict for the defendant.